In the Matter of Daniel Orvin HIEB.

No. C6–84–1310.

Court of Appeals of Minnesota.

Oct. 2, 1984.

Philip Villaume, St. Paul, for Hieb.

Thomas Johnson, Hennepin County Atty., James Albrecht, Asst. County Atty., LaRae Bradley, Staff Atty., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Hieb appeals from a June 26, 1984 order for commitment. The trial court concluded Hieb was mentally ill and in need of treatment at Anoka State Hospital. We affirm.

## FACTS

Hieb was arrested on June 14, 1984 for lurking with intent to commit burglary.

The municipal court ordered commencement of commitment proceedings and referred the matter to the mental health division of district court.

The arresting officer testified Hieb did not answer most questions put to him and he spoke in an unintelligible whisper in reply to simple requests for his name and other information. This near muteness was noted by witnesses at trial and persisted at the commitment hearing.

The psychiatric nurse who screened Hieb for possible commitment noted his frightened and disheveled appearance, matted hair, and inability to answer most questions. Hieb said he ate very little and refused prescribed psychotropic medications due to unspecified religious beliefs. Although Hieb had been provided with a voucher entitling him to sleep at a residential facility for mentally ill adults, he said he planned to sleep on the building ledge where police officers found him. The prepetition screening unit recommended commitment to Anoka State Hospital.

The court-appointed examiner, psychologist Chris Meadows, concluded Hieb "appears clearly to have a major psychiatric disorder" and recommended inpatient hospitalization and treatment. A second examiner was appointed at Hieb's request pursuant to Minn.Stat. § 253B.07, subd. 3. Psychiatrist Carl Schwartz concurred that Hieb suffered from a substantial psychiatric disorder and also recommended hospitalization.

The trial court also had the report of the treating physician, John Mulvahill. Mulvahill noted Hieb's muteness and indistinguishable whispers, dirty skin, poor eye contact, frightened appearance, low body weight, and matted hair.

The trial court found Hieb (1) was mentally ill, (2) suffered from a catatonic type schizophrenic reaction, (3) displayed instances of grossly disturbed behavior, (4) was unable to provide the necessities of life, and (5) alternatives less restrictive than commitment were inappropriate.

## ISSUE

Did the trial court properly find Hieb mentally ill to commit him to Anoka State Hospital?

## ANALYSIS

■ 1. A trial court must find by clear and convincing evidence the proposed patient is mentally ill as defined by statute to order commitment. Minn.Stat. § 253B.02, subd. 13 (Supp.1983). A finding is required (1) the patient suffers from a substantial psychiatric disorder which grossly impairs his judgment, behavior, recognition of reality, or reasoning and understanding, (2) the illness is manifested by grossly disturbed behavior or faulty perceptions, and (3) the person poses a substantial likelihood of physical harm to himself or others, shown by a recent attempt or threat of harm or a failure to provide necessary food, clothing, shelter, or medical care. *Id.* The court must also consider alternatives less restrictive than judicial commitment. Minn.Stat. § 253B.09, subd. 1 (1982).

■ 2. On appeal from an order for commitment, our review is limited to whether the trial court complied with the statutory requirements and whether the findings justifying commitment are clearly erroneous. *In re Fusa,* —— N.W.2d —— (Minn.Ct.App. October 2, 1984).

Hieb contends (1) the evidence was insufficient to support the trial court's finding he posed a substantial likelihood of physical harm to himself and (2) the trial court should have ordered commitment to a facility less restrictive than the state hospital.

■ The likelihood of physical harm to the proposed patient may be shown by his failure to provide needed food, clothing, shelter, or medical care. Minn.Stat. § 253B.01, subd. 13. Dr. Schwartz testified Hieb refuses to take prescribed medications and speculated Hieb may be able to feed and clothe himself with the assistance of the welfare system. Dr. Meadows believed appellant was unable to provide for his own needs and a sheltered residential facility would not be appropriate until some future date following treatment. Appel-

lant intended to sleep outdoors on a ledge rather than use any county provided housing. He was, by his own account, (1) not eating, (2) refusing medications and (3) neglecting his personal hygiene. In deference to the trial court's opportunity to evaluate the credibility of the witnesses and draw reasonable inferences from the evidence, we will not disturb the finding appellant posed a substantial likelihood of harm to himself. *See In re Psychopathic Personality of Dittrich v. County of Brown,* 215 Minn. 234, 237–38, 9 N.W.2d 510, 512–13 (1943).

■ 3. Appellant argues the trial court should have committed him to a board and care facility instead of the state hospital. The evidence showed (1) the experts unanimously recommended inpatient treatment, (2) appellant refused to take medications voluntarily, and (3) refused voluntary treatment of any kind. We cannot say the trial court's conclusion there was no suitable alternative to judicial commitment to Anoka State Hospital is clearly erroneous.

## DECISION

The trial court's findings appellant posed a substantial likelihood of harm to himself and Anoka State Hospital was the least restrictive suitable treatment facility are amply supported by the record.

Affirmed.